IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESSEX MARINA CITY CLUB, L.P., | ) | Case No. 11-408 SC |
| | ) | |
| Plaintiff, | ) | ORDER RE: DEFENDANT'S |
| | ) | MOTION TO DISMISS |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.  INTRODUCTION**

Before the Court is a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendant Continental Casualty Company ("Continental"). ECF No. 16 ("Mot."). Plaintiff Essex Marina City Club, L.P. ("Essex") filed an Opposition, and Continental filed a Reply. ECF Nos. 23 ("Opp'n"), 24 ("Reply"). For the following reasons, the Court GRANTS IN PART and DENIES IN PART Continental's Motion.

**II.  BACKGROUND**

As it must on a Rule 12(b)(6) motion, the Court assumes the truth of the following well-pleaded facts taken from Essex's Complaint. ECF No. 1 ("Notice of Removal") Ex. A ("Compl.").[1]

---

[1] Continental asks the Court to take judicial notice of various documents. See Mot. at 6. Essex does not oppose this request, and

1  Essex, a Palo Alto, California-based limited partnership, leased
2  real property located in Marina Del Rey, California, under a long-
3  term master lease between Essex's predecessor-in-interest and the
4  County of Los Angeles.  Id. ¶¶ 1, 6.  Essex's lease was subject to
5  a sublease between its predecessor-in-interest and Marina City
6  Condominiums ("MCC").  Id. ¶ 6.  Under this sublease, MCC had the
7  right to assign its subleasehold interest, on a condominium-by-
8  condominium basis, to individual condominium owners.  Id. ¶ 7.
9  Under a subleasehold deed of trust held by Essex, each condominium
10 owner was required to pay Essex a monthly maintenance fee for
11 common-area operating expenses, supplemental maintenance fees, a
12 separate "ground rent," and other fees and expenses.  Id. ¶ 8.
13    The Marina City Club Condominium Owners Association
14 ("Association") is apparently an association of individual
15 condominium owners.[2]  In 1994, Essex's predecessor-in-interest and
16 the Association entered into an agreement ("the 1994 Agreement") to
17 establish a "Management Council" to collect maintenance fees and
18 manage any common areas covered by the monthly maintenance fees.
19 Id. ¶ 9.  Under this Agreement, the Management Council would

---

joins in it with respect to one document -- the IndyMac complaint discussed below.  Opp'n at 7 n.4.  While generally a court may not consider material beyond the complaint when deciding a motion to dismiss, it may do so if "the plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  Here, because Essex's claims depend on the contents of the documents in question and Essex does not dispute their authenticity, the Court GRANTS Defendant's request.  However, because the Court may not take judicial notice of the truth of the facts recited within a judicially noticed document, Lee v. City of Los Angeles, 250 F.3d 668, 688-90 (9th Cir. 2001), it limits its review of these documents accordingly.

[2] Neither the Complaint nor the papers filed by the parties clearly identify or describe the Association.

United States District Court
For the Northern District of California

2

consist of two members appointed by Essex's predecessor-in-interest (and, subsequently, Essex) and two members of the Board of Directors of the Association. Id. ¶ 10. The Management Council was responsible for oversight and maintenance of the property, processing of evictions, management of the operating budget, and collection and enforcement of monthly maintenance fees and ground rents. Id. ¶ 11.

Continental, an insurance company, issued a professional liability policy to the Association for the period from November, 16, 2007 to November 16, 2008. Id. ¶ 18; Brisbin Decl. Ex. 1 ("Policy").[3] The sole named insured identified in the Policy is the Association. Id. An Endorsement to the Policy ("the Endorsement") extended the definition of "insured" to include "any Property Manager," as defined in the Endorsement. Id. ¶ 19.

In its capacity as a member of the Management Council, Essex initiated foreclosure proceedings against a condominium owner who allegedly failed to pay the required monthly fees and rent; the condominium was sold at a foreclosure sale. Id. ¶¶ 12-13. In February 2008, IndyMac Bank, F.S.B. ("IndyMac") filed a lawsuit against Essex and others to set aside the foreclosure sale and quiet title to the condominium ("the IndyMac proceedings"). Id. ¶ 14. Essex submitted a claim under the Policy to Continental for defense and indemnity of the IndyMac proceedings, and Continental denied coverage. Id. ¶ 22-26. Essex then commenced this action, seeking declaratory relief that Continental owed a duty to defend it in the IndyMac proceedings and alleging that Continental

---

[3] Michael K. Brisbin ("Brisbin"), counsel for Continental, filed a declaration in support of its Motion. ECF No. 17.

3

breached its contract and the implied covenant of good faith and fair dealing when it denied Essex's claim. See id.

In its Motion to Dismiss, Continental asserts that the facts pleaded in Essex's Complaint fail to support a claim. Specifically, Continental argues that Essex is not a named insured or additional insured under the Policy and thus has no standing to bring claims for breach of contract and bad faith. Continental also argues that the claim for declaratory relief is duplicative with Essex's claim for breach of contract. See Mot.

### III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint need not contain "detailed factual allegations," but it must provide more than an "unadorned, the-defendant-unlawfully-

4

harmed-me accusation." Id. at 1949.  Thus, a motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to . . . nudge[] [its] claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

## IV.  DISCUSSION

### A.  Breach of Contract

In California, to assert a claim for breach of contract, a plaintiff must plead: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (Ct. App. 2008).  In the context of a duty-to-defend action, an insurer is liable for breach of contract if it fails to defend "the named insured(s) and anyone else included in the policy's definition of 'insured.'"  Sprinkles v. Assoc. Indem. Corp., 188 Cal. App. 4th 69, 77 (Ct. App. 2010) (citation omitted).

Continental argues that Essex's breach-of-contract claim fails because Essex is not named as an insured in the Policy, and cannot satisfy the first breach-of-contract element -- existence of a contract.  Mot. at 8-9.[4]  In response, Essex argues inter alia that it has alleged a plausible entitlement to relief as a "Property Manager" under the Policy.  Opp'n at 6.

The parties agree that the Policy names as insureds both the Association and -- through the Endorsement -- a "Property Manager." Mot. at 8, Opp'n at 6.  Thus, if Essex is a "Property Manager" under the Policy, it is an insured, and if no exceptions apply,

---

[4] Continental characterizes this as a "standing" requirement.  Id.

5

1 Continental owed a duty to defend Essex during the IndyMac
2 litigation.
3 　　　The Court finds that the Complaint alleges sufficient facts to
4 support a plausible breach-of-contract claim.  The Endorsement
5 offers a detailed definition of "Property Manager" -- it is a
6 "person" providing services "in connection with the management of
7 commercial or residential property for and at the direction of the
8 Named Entity . . . for a fee."  See Policy at 12.  Among the
9 enumerated services listed are "solicitation, evaluation and
10 securing tenants and management of tenant relations, collection of
11 rent, and processing evictions with respect to Named Entity's
12 property."  Id.  Essex alleges that through its involvement in the
13 Management Council, it initiated foreclosure proceedings against a
14 condominium owner; that it was subsequently sued for these actions
15 by IndyMac; and that Continental refused to defend Essex in the
16 IndyMac proceeding.  As such, Essex has made a plausible claim that
17 it was serving as a "Property Manager" as defined under the Policy,
18 and thus was an insured.
19 　　　Continental argues that because the 1994 Agreement
20 contemplated the hiring of a professional property manager and
21 because the Complaint does not state that Essex performed this
22 eviction "for and at the direction of" the Association or that it
23 did so "for a fee," Essex's claim should fail.  See Opp'n.  Essex
24 counters that these are factual issues inappropriate for a Rule
25 12(b)(6) motion, arguing: "evidence surrounding the negotiation,
26 drafting and issuance of the policy and endorsement could provide
27 additional evidence of intent to include Essex within the class of
28 Property Managers for whose benefit the endorsement was procured."

6

Opp'n at 12. The Court agrees with Essex. Essex clearly alleges that it initiated the foreclosure proceedings "in its capacity as a member of the Management Council" -- an entity established jointly by Essex's predecessor-in-interest and the Association to collect fees and manage the property. Compl. ¶ 12. Thus, it is at the very least plausible that the Management Council initiated the foreclosure "for and at the direction of" the Association. As for Continental's "for a fee" argument, the Court finds that Essex's failure to state whether it performed its Management Council duties for a fee does not render its Complaint implausible, especially in light of the fact that under California law, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 304 (1993). Continental's Motion to dismiss Essex's breach-of-contract claim is DENIED.

### B. Declaratory Relief

Essex seeks a declaration as to whether "Defendant currently owes a duty to defend Essex in the IndyMac Action, which is on appeal." Opp'n at 18. Continental argues that Essex's declaratory relief claim should be dismissed, asserting that it is duplicative of its breach-of-contract claim. Mot. at 10.

Declaratory relief should not be used to determine issues that are already fully engaged by other causes of action. Hood v. Super. Ct., 33 Cal. App. 4th 319, 324 (Ct. App. 1995). Here, a declaration of the duty owed by Continental to Essex adds nothing to the breach-of-contract claim asserted and likely to be resolved in this action. As such, the Court GRANTS Continental's motion to dismiss Essex's declaratory relief claim.

7

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

For Essex's bad faith claim to survive a Rule 12(b)(6) motion, Essex's Complaint must allege and plead facts supporting a plausible claim that Continental engaged in unreasonable conduct in connection with its insurance claim. Century Sur. Co. v. Polisso, 139 Cal. App. 4th 922, 948 (Ct. App. 2006). Furthermore, "a breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment." Id. at 949.

Essex's Complaint alleges Continental breached this covenant by refusing to pay Essex benefits under the policy and failing to properly investigate Essex's claim, which it claims is part of "a common pattern and practice on the part of Continental with regard to the manner in which it treats its insureds." Compl. ¶ 42. Essex also makes a bare allegation that Continental "acted with malice, fraud and/or oppression, as defined by California Civil Code § 3294." Id. ¶ 44.

Continental argues that Essex's bad faith claim should fail for the same reasons that its breach-of-contract claim should fail -- namely, that there was no potential for coverage under the Policy. See Mot. at 11. For the reasons given above, the Court rejects this argument. However, the Court finds that the facts pleaded in the Complaint do not meet the "plausible" threshold. Continental's decision to deny Essex coverage alone does not support a bad faith claim, given the "something more" required by Century Surety Co. Once these allegations are set aside, little remains to support Essex's bad faith claim, as the only allegations supporting it are brief statements that Continental failed to

8

investigate Essex's claim as part of "a common pattern and practice." Compl. ¶ 42. The Court finds that Essex has not pleaded with the specificity required by <u>Iqbal</u> and <u>Twombly</u>. For these reasons, the Court GRANTS Continental's Motion as to Essex's bad faith claim.[5]

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant Continental Casualty Company's Motion to Dismiss. Essex Marina City Club, L.P.'s First and Third Causes of Action (for declaratory relief and breach of the implied covenant of good faith and fair dealing, respectively) are DISMISSED WITHOUT PREJUDICE. Within fifteen (15) days of this Order, Essex may file an amended complaint without seeking leave of the Court.

A Status Conference is scheduled for June 24, 2011, at 10:00 a.m. in Courtroom 1, Seventeenth Floor, U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102. Parties shall file an amended joint Case Management Statement by June 17, 2011.

IT IS SO ORDERED.

Dated: May 9, 2011

UNITED STATES DISTRICT JUDGE

---

[5] Essex makes new allegations of bad faith in its Opposition, stating: "Defendant played 'hot potato'," passing Essex's claim "from adjuster to adjuster," and delaying "making a coverage decision for more than two years, apparently hoping that Essex would eventually give up and not pursue its claim." Opp'n at 1. Because the Court looks to the allegations contained in the complaint alone in evaluating a Rule 12(b)(6) motion, it ignores these allegations.