1
2
3
4            IN THE UNITED STATES DISTRICT COURT
5           FOR THE NORTHERN DISTRICT OF CALIFORNIA
6
7   ESSEX MARINA CITY CLUB, L.P.,    )  Case No. 11-408 SC
                                     )
8               Plaintiff,           )  ORDER DENYING CONTINENTAL'S
                                     )  SECOND MOTION TO DISMISS
9          v.                        )
                                     )
10  CONTINENTAL CASUALTY COMPANY,    )
                                     )
11              Defendant.           )
                                     )
12                                   )
                                     )
13  _____)

14  **I.   INTRODUCTION**

15       Before the Court is a fully briefed motion by Defendant

16  Continental Casualty Company ("Continental") to dismiss the First

17  Amended Complaint filed by Plaintiff Essex Marina City Club, L.P.

18  ("Essex").  ECF Nos. 33 ("Mot."), 46 ("Opp'n"), 47 ("Reply").  For

19  the following reasons, the Court DENIES Continental's Motion.

20

21  **II.  BACKGROUND**

22       As it must on a Rule 12(b)(6) motion, the Court assumes the

23  truth of the following well-pleaded facts taken from Essex's First

24  Amended Complaint.  ECF No. 26 ("FAC").  Essex, a California-based

25  limited partnership, leased real property located in Marina Del

26  Rey, California under a long-term master lease between Essex's

27  predecessor-in-interest and the County of Los Angeles.  Id. ¶¶ 1,

28  6.  Essex's lease was subject to a sublease between its

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

predecessor-in-interest and Marina City Condominiums ("MCC").  Id. ¶ 6.  Under this sublease, MCC had the right to assign its subleasehold interest, on a condominium-by-condominium basis, to individual condominium owners.  Id. ¶ 7.  Under a subleasehold deed of trust held by Essex, each condominium owner was required to pay Essex a monthly maintenance fee for common-area operating expenses, supplemental maintenance fees, a separate "ground rent," and other fees and expenses.  Id. ¶ 8.

The Marina City Club Condominium Owners Association ("Association") is apparently an association of individual condominium owners.[1]  In 1994, Essex's predecessor-in-interest and the Association entered into an agreement ("the 1994 Agreement") to establish a "Management Council" to collect maintenance fees and manage any common areas covered by the monthly maintenance fees. Id. ¶ 9.  Under this Agreement, the Management Council would consist of two members appointed by Essex's predecessor-in-interest (and, subsequently, Essex) and two members of the Board of Directors of the Association.  Id. ¶ 10.  The Management Council was responsible for oversight and maintenance of the property, processing of evictions, management of the operating budget, and collection and enforcement of monthly maintenance fees and ground rents.  Id. ¶ 11.

Continental, an insurance company, issued a professional liability policy to the Association for the period from November, 16, 2007 to November 16, 2008.  Id. ¶ 18; Brisbin Decl. Ex. 1

---

[1] Neither the Complaint nor the papers filed by the parties clearly identify or describe the Association.

2

**United States District Court**
For the Northern District of California

1  ("Policy").[2]  The sole named insured identified in the Policy is

2  the Association.  Id.  An Endorsement to the Policy ("the

3  Endorsement") extended the definition of "insured" to include "any

4  Property Manager," as defined in the Endorsement.  Id. ¶ 19.  The

5  Policy is a "claims-made" policy that affords coverage for all

6  claims first made against any insured during the policy period.

7  Id. ¶ 20.

8      In its capacity as a member of the Management Council, Essex

9  initiated foreclosure proceedings against a condominium owner who

10  allegedly failed to pay the required monthly fees and rent; the

11  condominium was sold at a foreclosure sale.  Id. ¶¶ 12-13.  In

12  February 2008, IndyMac Bank, F.S.B. ("IndyMac") filed a lawsuit

13  against Essex and others to set aside the foreclosure sale and

14  quiet title to the condominium ("the IndyMac proceedings").  Id. ¶

15  14.  Around July 2008, Essex submitted a claim under the Policy to

16  Continental for indemnity and defense of the IndyMac proceedings.

17  Id. ¶ 21.  With its claim, Essex sent Continental copies of the

18  lease and sublease, the Agreement, and "additional documents

19  establishing the potential for coverage under the Policy and

20  therefore Continental's immediate duty to defend Essex in the

21  IndyMac Litigation."  Id. ¶ 23.

22      Essex alleges that Continental failed to make a timely

23  coverage decision on Essex's claim.  Id. ¶ 24.  It alleges that

24  Continental played "hot potato" with the claim, passing it through

25  five different adjusters and making "burdensome and duplicative

26  ───────────────────

27  [2] Michael K. Brisbin ("Brisbin"), counsel for Continental, filed a
declaration in support of its earlier motion.  ECF No. 17.  Brisbin
attaches to his declaration what he declares to be the Policy.

28  Because Essex does not dispute its authenticity and Essex's FAC
depends on its contents, the Court takes judicial notice of the
Policy.

requests for voluminous documents or information that had
previously been requested and provided multiple times, without
making a coverage decision." Id.  During the two-year pendency of
its claim, Essex alleges that it incurred "hundreds of thousands of
dollars in attorneys' fees in the IndyMac Litigation." Id.

On October 7, 2010, Continental denied Essex's claim on the
grounds that Essex was not identified by name on the declarations
page of the Policy and there was no written property management
agreement between Essex and Continental.  Id. ¶ 27.

On January 27, 2011, Essex commenced this action, seeking
declaratory relief that Continental owed a duty to defend it in the
IndyMac proceedings and alleging that Continental breached its
contract and the implied covenant of good faith and fair dealing
when it denied Essex's claim.  ECF No. 1 ("Notice of Removal") Ex.
A ("Orig. Compl.").  On Continental's motion to dismiss, the Court
dismissed Essex's declaratory relief claim as duplicative of its
breach of contract claim.  ECF No. 25 ("May 9, 2011 Order") at 9.
The Court also dismissed Essex's bad faith claim for failure to
plead with the required specificity.  ECF No. 25 ("May 9, 2011
Order") at 9.  The Court granted Essex fifteen days' leave to amend
its complaint to include a properly pleaded bad faith claim.  Id.

On May 24, 2011, Essex filed its FAC, which included the
above-mentioned allegations of Continental's alleged bad faith in
the claim determination process.  See FAC.  Essex alleged that
Continental consciously and unreasonably refused to grant its
claim, failed to make a timely ruling on its claim, failed to
properly investigate its claim, and embarked "on an interpretation
of the facts and policy provisions calculated to deprive Essex of

**United States District Court**
For the Northern District of California

1  coverage" to "sav[e] money at Essex's expense." <u>Id.</u> ¶ 46.  Essex

2  seeks damages "including attorneys' fees and expenses," as well as

3  punitive damages "to punish and make an example of Continental in

4  order to deter such conduct in the future." <u>Id.</u> ¶ 51.

5       On June 7, 2011, Continental filed the instant Motion.  <u>See</u>

6  Mot.  In it, Continental seeks dismissal of Essex's bad faith claim

7  as not plausible in light of the facts pleaded.    <u>Id.</u> at 1.

8  Continental argues that Essex's allegation that Continental

9  improperly investigated Essex's claim is inconsistent with Essex's

10 allegation that Continental made "burdensome and duplicative"

11 document requests.  <u>Id.</u> at 6.  Continental argues that to the

12 extent Essex premises its bad faith claim on Continental's delay in

13 deciding the claim, Continental is protected by California's

14 genuine dispute rule.  <u>Id.</u> at 8.  Continental seeks dismissal with

15 prejudice of the bad faith claim.  <u>Id.</u>

16

17 **III. LEGAL STANDARD**

18      A motion to dismiss under Federal Rule of Civil Procedure

19 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

20 <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal can be based

21 on the lack of a cognizable legal theory or the absence of

22 sufficient facts alleged under a cognizable legal theory.

23 <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

24 1990).  "When there are well-pleaded factual allegations, a court

25 should assume their veracity and then determine whether they

26 plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>

27 <u>Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).  However, "the tenet that a

28 court must accept as true all of the allegations contained in a

**United States District Court**
For the Northern District of California

1   complaint is inapplicable to legal conclusions.  Threadbare

2   recitals of the elements of a cause of action, supported by mere

3   conclusory statements, do not suffice." <u>Iqbal</u>, 129 S. Ct. at 1950

4   (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  A

5   complaint need not contain "detailed factual allegations," but it

6   must provide more than an "unadorned, the-defendant-unlawfully-

7   harmed-me accusation." <u>Id.</u> at 1949.  Thus, a motion to dismiss

8   should be granted if the plaintiff fails to proffer "enough facts

9   to . . . nudge[] [its] claims across the line from conceivable to

10   plausible." <u>Twombly</u>, 550 U.S. at 570.

11

12   **IV.**   <u>**DISCUSSION**</u>

13       The covenant of good faith and fair dealing "is implied as a

14   supplement to the express contractual covenants, to prevent a

15   contracting party from engaging in conduct that frustrates the

16   other party's rights to the benefits of the agreement." <u>Waller v.</u>

17   <u>Truck Ins. Exch., Inc.</u>, 11 Cal. 4th 1, 36 (1995).

18       For Essex's bad faith claim to survive a Rule 12(b)(6) motion,

19   Essex must plead facts supporting a plausible claim that

20   Continental engaged in unreasonable conduct in connection with its

21   insurance claim. <u>Century Sur. Co. v. Polisso</u>, 139 Cal. App. 4th

22   922, 948 (Ct. App. 2006).  This requires "something more than a

23   breach of the contract or mistaken judgment." <u>Id.</u> at 949.  An

24   insurer's actions may be unreasonable if it delays deciding the

25   insured's claim for an unreasonable amount of time, fails to

26   conduct an adequate investigation, or resorts to "oppressive

27   conduct by claims adjusters seeking to reduce the amounts

28   legitimately payable." <u>Waller</u>, 11 Cal. 4th. at 36.

United States District Court
For the Northern District of California

Essex alleges that Continental breached this covenant by, inter alia, taking two years to deny Essex's claim, failing to properly consider Essex's argument that it was insured as a "Property Manager" under the Policy, ignoring "key evidence establishing an immediate duty to defend," and by playing "hot potato" with its claim by passing it from adjuster to adjuster "in the hopes that Essex would eventually give up and not pursue its valid claim."  FAC ¶¶ 21-30.

Continental makes two arguments that these allegations are insufficient to plead a plausible bad faith claim.  It argues that Essex's contention that Continental improperly investigated Essex's claim is inconsistent with Essex's allegation that Continental made "burdensome and duplicative" document requests.  Id. at 6.  Second, it argues that to the extent Essex premises its bad faith claim on Continental's delay in deciding the claim, Continental is protected by California's genuine dispute rule.  Id. at 8.  Continental seeks dismissal with prejudice of the bad faith claim.  Id.

California's genuine dispute rule operates as an exception to the general rule that an unreasonable delay in payment of benefits due under an insurance policy gives rise to tort liability.  Brehm v. 21st Century Ins. Co., 166 Cal. App. 4th 1225, 1237 (Ct. App. 2008).  It provides that an insurer that denies or delays payment of benefits on the basis of a genuine dispute with the insured is not liable in bad faith, although it might be liable for breach of contract.  Id.

Continental argues that there existed a genuine dispute as to the validity of Essex's claim, as Essex was not a named insured under the policy and no written property management agreement

**United States District Court**
For the Northern District of California

between Essex and the Association had been produced.  Mot. at 8.

The Court finds Continental's arguments to be unavailing.  If Essex's bad faith claim was premised solely on Continental's alleged "burdensome and duplicative" document requests, Continental's first argument might have some merit.  But Essex also alleges that Continental delayed deciding Essex's claim for two years, ignored evidence and theories advanced by Essex, and passed its claim from adjuster to adjuster in an attempt to induce Essex to give up on its claim.  The Court finds that when all of these allegations are considered together, Essex's bad faith claim is adequately pleaded.  As for Continental's second argument under the genuine dispute rule, while there may have been a genuine dispute as to the validity of Essex's claim, this is an intensely factual issue not suitable for resolution on a Rule 12(b)(6) motion.  See Wilson v. 21st Century Ins. Co., 42 Cal. 4th. 714, 726 (2007) (triable issues of fact precluded summary judgment as to whether genuine dispute rule applied to plaintiff's bad faith claim).

**V.    CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant Continental Casualty Company's Motion to Dismiss.


IT IS SO ORDERED.


Dated: August 30, 2011

UNITED STATES DISTRICT JUDGE